**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:19-cv-00658** |
| | § | |
| **WILLIAM MARSH RICE UNIVERSITY** | § | |
| **d/b/a RICE UNIVERSITY**, | § | |
| **EMILY GARZA**, as agent for Rice | § | |
| Rice University, and **DONALD OSTDIEK**, | § | |
| as agent for Rice University**,** | § | |
| | § | |
| *Defendants.* | § | |

---

### PLAINTIFF JOHN DOE'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(3) MOTION TO DISMISS OR TRANSFER VENUE

---

NOW COMES, Plaintiff John Doe, and files this Response in Opposition to Defendants' Rice University, Donald Ostdiek, and Emily Garza (hereinafter, collectively, "Defendants") Rule 12(b)(3) Motion to Dismiss or Transfer Venue from the Eastern District of Texas to the Southern District of Texas (the "Motion"), and would respectfully show the honorable Court, as follows:

TABLE OF CONTENTS

Table of Authorities .................................................................................................................ii
I. Relevant Factual and Procedural Background ....................................................................1
   A.   A Substantial Part of the Events or Omissions Giving Rise to John Doe's Claims and
Damages Occurred in the Eastern District of Texas .................................................................1
   B.   Procedural Posture....................................................................................................3
II. Arguments and Authorities.................................................................................................4
   A.   Rule 12(b)(3) Dismissal or Transfer, Pursuant to 28 U.S.C. § 1406(a)....................  5
   B.   Transfer for Convenience, Pursuant to 28 U.S.C. § 1404(a)................................. 9
     i.  The "relative ease of access to sources of proof" leans in favor of maintaining
Plaintiff's chose venue……………………………………………………………  11
     ii.  The "cost of attendance for willing witnesses" weighs in favor of venue remaining in
the EDTX, and Defendants have failed to show that any witness should be unwilling to
attend trial……………………………………………………………………… 11
     iii.  The "availability of compulsory process to secure the attendance of witnesses" factor
weighs in favor of venue in the EDTX……………………………………………..13
     iv.  Defendants fail to address the "administrative difficulties flowing from court
congestion" factor, and thus, it must weigh in favor of venue in the EDTX……………14
     v.  The "local interest in having localized interested decided at home" factor is neutral..14
     vi.  The "familiarity of the forum with the law that will govern the case" and "avoidance
of unnecessary problems of conflicts of laws" factors are neutral………………………15
III. Conclusion .......................................................................................................................15

TABLE OF AUTHORITIES

**Cases**

*Bates v. C&S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992). ................................................... 6, 15

*Calloway v. Triad Financial Corp.*, 2007 WL 4548085, at *2 (N.D. Tex., Dec. 27, 2007)... 10, 14

*Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*,
2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008) ................................................................. 5, 6

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153  (10th Cir. 2010).......6, 8, 9, 12, 13

*First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998). .............................................. 6, 16

*Hovanas v. American Eagle Airlines, Inc.*, 2009 WL 980111, at *2 (N.D. Tex., April 8, 2009) . 11

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ................................................. 9, 10

*Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523 (5th Cir. 1988)......................................... 10

*Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558  (8th Cir. 2003) ...................................... 6, 16

*Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 4:18-CV-371-ALM, 2019 WL 2524830, at
*1 (E.D. Tex. June 19, 2019)...................................................................................................... 5

*Smith v. Michels Corporation*, 2013 WL 4811227, at *1 (E.D. Tex., Sept. 9, 2013)  ....... 9, 10, 13

*Thomas v. City of Fort Worth*, 2008 WL 4225556, at *2 (N.D. Tex., Sept. 15, 2008). .............. 11

*TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F.Supp.2d 561, (N.D. Tex. 2001) ........................... 10

*Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, (1st Cir. 2001) ...................................... 6, 16

**Statutes**

28 U.S.C. § 1391(b)....................................................................................................................5, 6

28 U.S.C. § 1404(a). ....................................................................................................................4, 9

28 U.S.C. § 1406(a) ..............................................................................................................4, 5, 6, 9

**Rules**

Federal Rule of Civil Procedure 12(b)(3) ........................................................................... passim

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................4

# I.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As a Freshman football player and student at Rice University, John Doe (18 years old at the time) engaged in a consensual and intimate relationship with fellow student, Jane Roe (21 years old at the time), including multiple instances of unprotected intercourse. (Doc. 1, Original Complaint, p. 2). After John Doe and Jane Roe broke up, Jane Roe complained to Rice University, *inter alios*, that John Doe had maliciously infected her with genital herpes, and John Doe was ultimately released from the football team and forced to leave Rice University. (*Id.* at 2-4). However, Rice University intentionally ignored substantial exculpatory information during its sham investigation, not the least of which were Jane Roe's *multiple* admissions that John Doe had, in fact, informed her of his herpes condition before their first sexual experience. (*Id.* at 3-4).

### A. A Substantial Part of the Events or Omissions Giving Rise to John Doe's Claims and Damages Occurred in the Eastern District of Texas

At all times relevant to this action, John Doe's permanent residence has been and continues to be in Plano, Collin County, Texas, Eastern District of Texas. John Doe grew up and graduated from high school in Plano, Texas, and his mother and father continue to live there to this day. (Exh. A, Affidavit of John Doe, p. 1).

John Doe's first interaction with any representative from Rice University occurred in the Spring of 2016 while he was a Junior at Plano East Senior High School at 3000 Los Rios Boulevard, Plano, Collin County, Texas, Eastern District of Texas. (*Id.* at 2). At that time, a coach (or similar representative) came to watch him play football during a 7-on-7 practice. (*Id.*). After the practice, the coach approached John Doe and they spoke at length about considering Rice University for his collegiate football career. (*Id.*).

1

During the 2016-2017 school year, while John Doe was a Senior at Plano East Senior High School, coaches (or similar representatives) from Rice University came to talk with him and watch him play in both football and basketball games at his high school located in Plano, Collin County, Texas, Eastern District of Texas. (*Id*.). During those meetings with coaches from Rice University, they further encouraged him to consider Rice University for his collegiate football career and discussed scholarship potential. (*Id*.).

Ultimately, John Doe was summoned into the office of coach Jaydon McCullough at Plano East Senior High School, where he took a phone call from a Rice University coach (or similar representative), who offered him a scholarship to play football at Rice University. (*Id*.). Sometime later, a representative of Rice University emailed the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-In-Aid* for him to print and sign at his home in Plano, Collin County, Texas, Eastern District of Texas. (*Id*.).

At approximately 7:00 am on February 1, 2017, John Doe and his father signed two (2) contracts with Defendant Rice University; specifically, the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-in-Aid*, providing for an award of 100% of an Athletics Grant-in-Aid. (*Id*.). John Doe and his father signed these contracts at their permanent residence in Plano, Collin County, Texas, Eastern District of Texas. (*Id*.).

On or about December 14, 2017, John Doe received a series of messages on Snapchat from Jane Roe, alleging, in effect, that he had intentionally and maliciously infected her with genital herpes and failed to inform her that the condition is incurable. (*Id*. at 2-3). This was the first time that John Doe learned of Jane Roe's false allegations against him. At the time of these communications between John Doe and Jane Roe, John Doe was at home for the Christmas holiday in Plano, Collin County, Texas, Eastern District of Texas. (*Id*. at 3). Also, on or about

December 14, 2017, John Doe received a text message from Jane Roe stating, in effect, *"I'm going to fuck you over. Guess where I'm at? The Houston P.D."* (*Id.*). At the time John Doe received this message, he was in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*).

On March 6, 2018, John Doe drafted and delivered a four-page written response to the allegations made against him by Jane Roe that were contained in a letter from Defendant Emily Garza dated February 14, 2018. (*Id.*). John Doe's response letter was drafted on a computer and sent from his permanent residence in Plano, Collin County, Texas, Eastern District of Texas, as noted in the heading of his response letter. (*Id.*).

Following Jane Roe's allegations and John Doe's suspension from the football team, John Doe's father had a few discussions over the phone with the new football head coach regarding John Doe's status on the football team, whether his football scholarship would be renewed, and transfer opportunities. John Doe's father had all of these discussions from their permanent residence in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*). John Doe ultimately learned that he had been released from the Rice University football program near the end of the Spring 2018 semester while he was, likewise, at home in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*).

## B.  *Procedural Posture*

On September 11, 2019, John Doe brought this case against Defendants, alleging that Defendants treated Plaintiff in a manner inconsistent with 20 U.S.C. § 1681, *et seq*. ("Title IX"), federal and state law, and Rice University's policies and procedures, stripping him of his rights to a fair and just investigation and adjudication process. (Doc. 1).

On or about December 12, 2019, Defendants collectively filed the live Motion, requesting that this Court, *inter alia*,[1] dismiss Plaintiff's claims for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, transfer the suit to the Southern District of Texas for further proceedings, pursuant to 28 U.S.C. § 1404(a). (Doc. 14, pp. 1-20).

Plaintiff respectfully moves this honorable Court to deny Defendants' Motions and not disturb Plaintiff's choice of forum for several significant reasons addressed, in turn, below.

## II.
### ARGUMENTS AND AUTHORITIES

Defendants' Motion presents two bases upon which it moves this Court to scrutinize Plaintiff's choice of venue in the Eastern District of Texas (EDTX), Sherman Division. *First*, Defendants aver that wholesale dismissal or transfer of Plaintiff's lawsuit is mandated under Rule 12(b)(3) and 28 U.S.C. § 1406(a), because (a) the Defendants do not reside in the judicial district, and (b) no substantial part of any event or omission occurred therein. (Doc. 14, pp. 11-16). *Second*, Defendants allege that, even if dismissal or transfer are not mandatory, this Court should transfer this matter to the Southern District of Texas (SDTX) because that would be the clearly more convenient forum, pursuant to 28 U.S.C. § 1404(a). (Doc. 14, pp. 17-20).

As a threshold matter, Plaintiff John Doe represents to this honorable Court that his inadvertent pleading regarding all parties' residences being in the EDTX was truly an oversight, and certainly, Plaintiff would not have made such a provably inaccurate pleading intentionally or surreptitiously.

---

[1] In the same document, (*i.e.*, Doc. 14), Defendants seek dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). This Response shall only address Defendants' motions related to venue (*i.e.*, Rule 12(b)(3), 28 U.S.C. § 1406(a) and 28 U.S.C. 1404(a)), and Plaintiff will file a separate response in opposition to Defendants' Rule 12(b)(6) motion.

With that said, however, Defendants are woefully misinformed with regard to their allegation that "no substantial part of any event or omission occurred" in this judicial district, (Doc. 14, p. 13), as it was in the EDTX that, *inter alia*: (a) John Doe first learned from Jane Roe of the malicious allegations she intended to levy against him, (Exh. A, p. 2-3); (b) John Doe conversed with Jane Roe in that regard, (*Id.*); (c) Jane Roe told John Doe that she was reporting him to law enforcement, (*Id.* at 3); and (d) John Doe drafted in whole and delivered to Rice University his four-page, formal response to the "dating violence" investigation instituted against him by Jane Roe, Donald Ostdiek, Emily Garza, and Rice University, (*Id.* at 3). In light of these and many other relevant factual occurrences that transpired within the EDTX, this honorable Court should reject Defendants' misinformed representation that no substantial part of any event or omission occurred in this judicial district.

## A. Rule 12(b)(3) Dismissal or Transfer, Pursuant to 28 U.S.C. § 1406(a)

Plaintiff John Doe avers that Defendants' Rule 12(b)(3) Motion to Dismiss or to Transfer Venue, pursuant to 28 U.S.C. § 1406(a), should be denied and this matter kept before this Court, as the Sherman Division of the EDTX is a judicial district where a substantial part of the events or omissions giving rise to the claims and damages herein occurred. *See* 28 U.S.C. § 1391(b)(2). However inconvenient and teeth-gnashing it may be for Defendants, many of the most important and substantial factual developments in this case occurred for John Doe while he was in the Eastern District of Texas, and such things are known to happen in this electronic age.

"Once a defendant raises improper venue by motion, the burden of sustaining venue will be on the Plaintiff." *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 4:18-CV-371-ALM, 2019 WL 2524830, at *1 (E.D. Tex. June 19, 2019) (Mazzant, J.) (quoting *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008)). "Plaintiff may carry

this burden by establishing facts that, if taken to be true, establish proper venue." *Id*. (citations omitted). "The Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Id*. (quotations omitted). "In determining whether venue is proper, the Court may look beyond the complaint to evidence submitted by the parties." *Id*. (quotations omitted). "If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id*. (citing 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3)).

In making its determination, a court does not ask which district among potential forums is the "best" venue. *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). Instead, the court asks whether the district that the plaintiff chose had a substantial connection to the claim, regardless of whether other districts had greater connections. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003); *Bates*, 980 F.2d at 867; *see also Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 (1st Cir. 2001) (when events underlying claims have occurred in different places, venue may be proper in several districts). Merely showing that another district has a more substantial connection to the plaintiff's claims is not enough to defeat the plaintiff's choice of venue. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).

Plaintiff's Original Complaint asserts jurisdiction in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391(b), as a judicial district in which a substantial part of the acts or omissions giving rise to the claims occurred. (Doc. 1, p. 9, ¶26). "In general, the plaintiff's choice of forum weighs heavily against a transfer of venue." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167–68 (10th Cir. 2010). "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id*. at 1167 (internal quotations omitted).

*First*, none of the cases cited by Defendants in support of their Rule 12(b)(3) Motion to Dismiss for improper venue stand for the notion that a district court should dismiss a complaint for improper venue where the plaintiff has legitimate and good faith allegations that events and omissions related to the claims occurred in the plaintiff's chosen venue.

*Second*, the weighty constellation of allegations giving rise to venue within the EDTX include, but are not limited to, the following:

i.  At all times relevant to this action, John Doe's permanent residence has been and continues to be in Plano, Collin County, Texas, Eastern District of Texas. John Doe grew up and graduated from high school in Plano, Texas, and his mother and father continue to live there to this day. (Exh. A, Affidavit of John Doe, p. 1).

ii.  John Doe's first interaction with any representative from Rice University occurred in the Spring of 2016 while he was a Junior at Plano East Senior High School at 3000 Los Rios Boulevard, Plano, Collin County, Texas, Eastern District of Texas. (*Id.* at 2). At that time, a coach (or similar representative) came to watch him play football during a 7-on-7 practice. (*Id.*). After the practice, the coach approached John Doe and they spoke at length about considering Rice University for his collegiate football career. (*Id.*).

iii.  During the 2016-2017 school year, while John Doe was a Senior at Plano East Senior High School, coaches (or similar representatives) from Rice University came to talk with him and watch him play in both football and basketball games at his high school located in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*). During those meetings with coaches from Rice University, they further encouraged him to consider Rice University for his collegiate football career and discussed scholarship potential. (*Id.*).

iv.  Ultimately, John Doe was summoned into the office of coach Jaydon McCullough at Plano East Senior High School, where he took a phone call from a Rice University coach (or similar representative), who offered him a scholarship to play football at Rice University. (*Id.*). Sometime later, a representative of Rice University emailed the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-In-Aid* for him to print and sign at his home in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*).

v.  At approximately 7:00 am on February 1, 2017, John Doe and his father signed two (2) contracts with Defendant Rice University; specifically, the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-in-Aid*, providing for an award of 100% of an Athletics Grant-in-Aid. (*Id.*). John Doe and his father signed these contracts at their permanent residence in Plano, Collin County,

Texas, Eastern District of Texas. (*Id.*).

vi.  On or about December 14, 2017, John Doe received a series of messages on Snapchat from Jane Roe, alleging, in effect, that he had intentionally and maliciously infected her with genital herpes and failed to inform her that the condition is incurable. (*Id.* at 2-3). This was the first time that John Doe learned of Jane Roe's false allegations against him. At the time of these communications between John Doe and Jane Roe, John Doe was at home for the Christmas holiday in Plano, Collin County, Texas, Eastern District of Texas. (*Id.* at 3). Also, on or about December 14, 2017, John Doe received a text message from Jane Roe stating, in effect, *"I'm going to fuck you over. Guess where I'm at? The Houston P.D."* (*Id.*). At the time John Doe received this message, he was in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*).

vii.  On March 6, 2018, John Doe drafted and delivered a four-page written response to the allegations made against him by Jane Roe that were contained in a letter from Defendant Emily Garza dated February 14, 2018. (*Id.*). John Doe's response letter was drafted on a computer and sent from his permanent residence in Plano, Collin County, Texas, Eastern District of Texas, as noted in the heading of his response letter. (*Id.*).

viii.  Following Jane Roe's allegations and John Doe's suspension from the football team, John Doe's father had a few discussions over the phone with the new football head coach regarding John Doe's status on the football team, whether his football scholarship would be renewed, and transfer opportunities. John Doe's father had all of these discussions from their permanent residence in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*). John Doe ultimately learned that he had been released from the Rice University football program near the end of the Spring 2018 semester while he was, likewise, at home in Plano, Collin County, Texas, Eastern District of Texas. (*Id.*).

Of particular note, Plaintiff's signing of the contracts with Rice University are directly relevant to Plaintiff's damages in this suit, as the breach or revocation of those contracts dealt immense financial, emotional, and other harms to him, including, but not limited to, (a) the loss of his *Rice University Grant-In-Aid*, (b) diminished professional football career prospects, (c) the loss of a highly valuable degree from the vaunted Rice University, and (d) severe depression and suicidal ideations. (Doc. 1, p. 32).

"In general, the plaintiff's choice of forum weighs heavily against a transfer of venue." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167–68 (10th Cir. 2010). "Unless

the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 1167 (internal quotations omitted). In view of the above, it is clear that a substantial, if not the *most* substantial, part of the events giving rise to John Doe's claims (*i.e.*, the levying of and formal response to Jane Roe's malicious allegations of dating violence, gain and loss of scholarships to Rice University) occurred for John Doe in and around his family's home in Plano, Collin County, Texas, Eastern District of Texas. Accordingly, John Doe would ask this honorable Court to deny (i) Defendants' Rule 12(b)(3) Motion to Dismiss for improper venue and (ii) Defendants' alternative motion to transfer venue pursuant to 28 U.S.C. § 1406(a).

However, should this Court find it proper to transfer this case, Plaintiff John Doe respectfully asks that, in the interest of justice, this matter be transferred to the SDTX and not dismissed.

### B. Transfer for Convenience, Pursuant to 28 U.S.C. § 1404(a)

John Doe avers that Defendants' alternative motion for transfer to the SDTX for convenience should be denied and this matter kept in the Sherman Division of the EDTX, as the balance of factors weigh in favor of this matter being maintained, here. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). Importantly, the decision to transfer a matter to another judicial division or district for convenience is entirely within the sound discretion of this Court. *See id.* Although the plaintiff's choice of venue is not a separate factor in this analysis, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008), "the plaintiff's choice of forum contributes to the defendant's burden in showing good cause for the transfer." *Smith v. Michels Corporation*, 2013 WL 4811227, at *1 (E.D. Tex., Sept. 9, 2013) (Gilstrap, J.).

The importance that courts must give to the plaintiff's choice of forum "is manifested by placing a *significant burden* on the movant to show good cause for transfer." *Smith v. Michels Corporation*, 2013 WL 4811227, at *3. In order to show good cause, "the moving party must demonstrate that the transferee venue is 'clearly more convenient' than the transferor venue." *Id.* (quoting *In re Volkswagen*, 545 F.3d, at 315). Importantly, "[t]he decision to transfer venue is at the discretion of the court, and the plaintiff's choice in forum should not be destroyed unless the balance of factors *strongly favors* the moving party." *Calloway v. Triad Financial Corp.*, 2007 WL 4548085, at *2 (N.D. Tex., Dec. 27, 2007) (citing *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988); *TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F.Supp.2d 561, 568 (N.D. Tex. 2001)) (emphasis added).

In determining the convenience to parties and witnesses and whether the requested transfer is truly in the interest of justice, the Court should consider a variety of both public and private factors; however, none of these factors are dispositive on their own. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Smith v. Michels Corporation*, 2013 WL 4811227, at *1. The additional public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*

Here, Defendants have failed to meet their burden of showing that the Sherman Division of the EDTX is *so clearly inconvenient* that this Court should surrender this matter and vacate

Plaintiff's chosen, permissible venue to the SDTX. *See Hovanas v. American Eagle Airlines, Inc.*, 2009 WL 980111, at *2 (N.D. Tex., April 8, 2009) ("If the transferee venue is no more convenient than the chosen venue, the plaintiff's choice should not be disturbed.") (quoting *Thomas v. City of Fort Worth*, 2008 WL 4225556, at *2 (N.D. Tex., Sept. 15, 2008)).

 **i.** **The "relative ease of access to sources of proof" leans in favor of maintaining Plaintiff's chosen venue**

   Defendants allege that this factor, specifically, weighs in favor of transfer because Defendants' "declarations establish that all of Rice's files, records, and documents relating to this dispute are in the Southern District of Texas and none are found in the Eastern District of Texas." (Doc. 14, p. 18).

   However, Defendants' contention in this regard belies the plain fact that every single document relevant to this action can and will be transmitted between the parties in discovery via electronic means, *regardless of the ultimate venue in this case*. Plaintiff's counsel is located in Fort Worth, while Defendants' counsel is located in Houston. Defendants have not offered a single legitimate argument as to why or how the documentary evidence in this case would be clearly more convenient for the parties to jointly access in a different judicial district.

   As a matter of fact, Defendants have already transmitted four-hundred seventy-one (471) pages of documentary evidence and exhibits in support of its motions to dismiss via electronic means, which is clearly more convenient, expedient, and less expensive than traditional mailing methods or copying of such documentary evidence at the offices of opposing counsel. (*See* Doc. 14, Exh. A, B, C [filed under seal]). As such, it is clear that this factor of the venue transfer analysis remains in favor of maintaining Plaintiff's chosen forum—the EDTX.

 **ii.** **The "cost of attendance for willing witnesses" weighs in favor of venue remaining in the EDTX, and Defendants have failed to show that any witness would be unwilling to attend trial**

Defendants argue that transfer to the SDTX is proper because "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses" and "the key nonparty witness, [Jane] Roe, lives in Houston." (Doc. 14, p. 19). Defendants, further, assert that all other witnesses, aside from John Doe, "likely live in the Southern District of Texas." (*Id.*).

"The convenience of witnesses is the most important factor in deciding" a motion to transfer venue. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). However, in *Bartile*, the Court held that a party moving to transfer venue must make specific showings in order to "demonstrate inconvenience" with respect to witnesses. *Id.* The movant must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial . . . , that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (alterations and quotations omitted). "It is not enough for the moving party merely to offer a general allegation that necessary witnesses are located in the transferee forum." *Id.* (internal quotation marks omitted). Defendants have met none of these requirements.

As a threshold matter, the permanent residence of the key witness, John Doe, is located in the Eastern District of Texas. (Exh. A, p. 1). Furthermore, John Doe's mother and father, who will testify as fact witnesses and as to John Doe's emotional and economic damages, *inter alia*, also live in the Eastern District of Texas. (*Id.*).

Although Defendants attempt to assert that the key non-party witness, Jane Roe, lives in the SDTX, Defendants have failed to provide any *actual* proof that Jane Roe's current residence is, in fact, located in the SDTX. (Doc. 14, p. 19). Instead, Defendants cite a police report from December 2017, indicating Jane Roe's address at that time over two years ago. (Doc. 14, Exh. C, p. 9). Furthermore, Defendants have fatally failed to identify any potential witnesses in this case

who would be *unwilling* or *unable* to attend trial in the EDTX. *Bartile Roofs, Inc.*, 618 F.3d at 1169. Moreover, "to hold that such a slight inconvenience weighs in favor of transfer would eviscerate the importance that we must give to the plaintiff's choice of forum." *Smith v. Michels Corporation*, 2013 WL 4811227, at *3 (E.D. Tex., Sept. 9, 2013) (Gilstrap, J.).

"Ultimately, it is within the Court's 'broad discretion' whether to order a transfer." *Id.* at *1. For the reasons stated, John Doe respectfully avers that this element of the analysis remains neutral; particularly, in light of Defendants' failure to identify even *one* witness who would be unwilling to attend trial in the EDTX, and thus, John Doe's chosen venue should remain undisturbed. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

### iii. *The "availability of compulsory process to secure the attendance of witnesses" factor weighs in favor of venue in the EDTX*

With great brevity, Defendants contend that this factor weighs in favor of transfer because "[t]he nonparty witnesses are primarily located in Houston, which for the most part is outside this district's subpoena power for depositions and hearings . . . and only within this district's subpoena power for trial if attendance at trial would not incur a substantial expense . . . " (Doc. 14, p. 19).

Defendants are inarguably incorrect in their assertion. *First*, the City of Houston lies almost entirely—if not literally entirely—within 100 miles of the Eastern District of Texas. *Second*, Defendants have only identified **_one_** non-party witness, Jane Roe, who may or may not actually be located in Houston, as the address provided by Defendants was extracted from a police report dated over two years ago. (Doc. 14, Exh. C, p. 9). *Third*, Defendants fail to provide *any* allegation or evidence to suggest that Jane Roe would be unwilling to testify or appear for trial, and she has certainly shown her willingness to levy public allegations against John Doe in

13

the past. *Fourth*, John Doe has identified two (2) non-party witnesses (*i.e.*, his mother and father) who, in fact, reside in the EDTX and whose present addresses are known.

As such, the honorable Court should find that this factor weighs in favor of venue remaining in the EDTX.

### iv.   *Defendants fail to address the "administrative difficulties flowing from court congestion" factor, and thus, it must weigh in favor of venue in the EDTX*

Defendants do not even address this factor of the analysis, and as such, the Court should find that it is conceded in favor of Plaintiff's chosen forum. Indeed, Defendants have provided neither contention nor argument that the administrative congestion of the EDTX is any greater than that of the SDTX, thus warranting transfer of venue. *See Calloway v. Triad Financial Corp.*, 2007 WL 4548085, at *4 (N.D. Tex., Dec. 27, 2007). In the absence of any argument or support, it is clear that this factor must point to venue remaining in the EDTX.

### v.   *The "local interest in having localized interested decided at home" factor is neutral*

Again, with great brevity, Defendants allege that this factor weighs in favor of transfer to the SDTX because: (i) "all of the acts giving rise to this action occurred in the [SDTX]"; (ii) "a large number of witnesses reside and are employed [there]"; and (iii) it would be contrary to encumber the citizens of the EDTX with this case. (Doc. 14, p. 20). Plaintiff strongly disagrees with the characterization of these alleged bases and will address each, below.

*First*, contrary to Defendants' contention that the citizens of the EDTX should not be encumbered by this matter, Plaintiff John Doe strongly avers that the citizens of the EDTX would, in fact, take great interest in the life-altering discrimination and heinous treatment that a local football player experienced after receiving a scholarship to attend Rice University. Moreover, this is not a matter occurring between districts in multiple states, where the citizens may have no knowledge of or interest in the subject matter of the litigation. At contention are

two judicial districts in the Great State of Texas, and who citizens are certainly interested in and familiar with the events taking place within their own state.

*Second*, Plaintiff would, again, note that he has identified at least three primary witnesses who reside in the EDTX and whose testimony will be integral to the production of this matter, including Plaintiff John Doe, his mother, and his father.

*Third*, as noted hereinabove, however Defendants may attempt to frame the location of events made basis of this action, it is indisputable that a substantial part of the events or omissions giving rise to John Doe's claims occurred, for him, in the Sherman Division of the Eastern District of Texas.

As such, it is clear that this factor remains neutral and, therefore, venue should remain in the EDTX.

### vi. The "familiarity of the forum with the law that will govern the case" and "avoidance of unnecessary problems of conflicts of laws" factors are neutral

Again, Defendants have failed to address this element of the venue transfer analysis, and as such, John Doe contends that this Court should assume it falls in favor of Plaintiff's preferred venue—the EDTX.

### III.
### CONCLUSION

Defendants' Rule 12(b)(3) Motion to Dismiss or for Transfer Venue to the Southern District of Texas should be denied. In making its determination, a court does not ask which district among potential forums is the "best" venue. *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). Instead, the court asks whether the district that the plaintiff chose had a substantial connection to the claim, regardless of whether other districts had greater connections. *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003); *Bates*, 980 F.2d at

867; *see also Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 (1st Cir. 2001) (when events underlying claims have occurred in different places, venue may be proper in several districts). Merely showing that another district has a more substantial connection to the plaintiff's claims is not enough to defeat the plaintiff's choice of venue. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).

For the reasons, above, Plaintiff respectfully requests that this honorable Court deny Defendants' Rule 12(b)(3) Motion to Dismiss or Motion to Transfer Venue, or in the alternative, transfer this matter to the SDTX in the interest of justice. Plaintiff further requests that the Court grant any other relief, in law or in equity, to which he is justly entitled, including leave to file an amended complaint to address any deficiencies noted by the Court.

Respectfully submitted.

/s/Susan E. Hutchison
SUSAN E. HUTCHISON
Texas Bar No. 10354100
sehservice@hsjustice.com

J. ROBERT HUDSON, JR.
Texas Bar No. 24094736
jr@hsjustice.com

HUTCHISON & STOY, PLLC
505 Pecan Street, Suite 101
Fort Worth, Texas 76102
T: (817) 820-0100
F: (817) 820-0111

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

This is to certify that on this January 27, 2020, a true and correct copy of the above and foregoing document was served on the following attorney of record via the court's electronic service:

**RUSTY HARDIN &ASSOCIATES, LLP**
Russell Hardin, Jr.
rhardin@rustyhardin.com
Terry D. Kernell
tkernell@rustyhardin.com
Emily M. Smith
esmith@rustyhardin.com
5 Houston Center
1401 McKinney Street, Suite
Houston, TX  77010

/s/Susan E. Hutchison
SUSAN E. HUTCHISON

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:19-cv-00658** |
| | § | |
| **WILLIAM MARSH RICE UNIVERSITY** | § | |
| **d/b/a RICE UNIVERSITY**, | § | |
| **EMILY GARZA**, as agent for Rice | § | |
| Rice University, and **DONALD OSTDIEK**, | § | |
| as agent for Rice University**,** | § | |
| | § | |
| *Defendants.* | § | |

## AFFIDAVIT OF REDACTEDREDACTED

BEFORE ME, the undersigned authority, on this day personally appeared REDACTED REDACTED, known to me to be the person whose name is subscribed below and after having been duly sworn, on his oath stated, as follows:

1.      "My name is REDACTED                , and I am Plaintiff John Doe in the above-captioned cause of action. I am over the age of eighteen (18) years. I have never been convicted of a felony or a crime involving moral turpitude, am under no disabilities, and am fully competent and qualified to make this Affidavit. Each of the statements in this Affidavit are within my personal knowledge and are true and correct.

2.      "At all times relevant to this action, my permanent residence has been and continues to be REDACTED         , Plano, Collin County, Texas, Eastern District of Texas. I grew up and graduated from high school in Plano, Texas, and my mother and father continue to live there to this day.

Exhibit A

3.      "My first interaction with any representative from Rice University occurred in the Spring of 2016 while I was a Junior at Plano East Senior High School at 3000 Los Rios Boulevard, Plano, Collin County, Texas, Eastern District of Texas. At that time, a coach (or similar representative) came to watch me play football during a 7-on-7 practice. After the practice, the coach approached me and we spoke at length about considering Rice University for my collegiate football career.

4.      "During the 2016-2017 school year, while I was a Senior at Plano East Senior High School, coaches (or similar representatives) from Rice University came to talk with me and watch me play in both football and basketball games at my high school located in Plano, Collin County, Texas, Eastern District of Texas. During those meetings with coaches from Rice University, they further encouraged me to consider Rice University for my collegiate football career and discussed scholarship potential.

5.      "Ultimately, I was summoned into the office of coach Jaydon McCullough at Plano East Senior High School, where I took a phone call from a Rice University coach (or similar representative), who offered me a scholarship to play football at Rice University. Sometime later, a representative of Rice University emailed the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-In-Aid* for me to print and sign at my home in Plano, Collin County, Texas, Eastern District of Texas.

6.      "At approximately 7:00 am on February 1, 2017, my father and I signed two (2) contracts with Defendant Rice University; specifically, the *National Letter of Intent* to attend Rice University and a *Rice University Athletics Grant-in-Aid*, providing for an award of 100% of an Athletics Grant-in-Aid. My father and I signed these contracts at our permanent residence in Plano, Collin County, Texas, Eastern District of Texas.

7.      "On or about December 14, 2017, I received a series of messages on Snapchat from Jane

Exhibit A

Roe, alleging, in effect, that I had intentionally and maliciously infected her with genital herpes and failed to inform her that the condition is incurable. This was the first time that I learned of Jane Roe's false allegations against me. At the time of these communications between myself and Jane Roe, I was at home for the Christmas holiday in Plano, Collin County, Texas, Eastern District of Texas.

8.     "Also, on or about December 14, 2017, I received a text message from Jane Roe stating, in effect, *"I'm going to fuck you over. Guess where I'm at? The Houston P.D."* At the time I received this message, I was in Plano, Collin County, Texas, Eastern District of Texas.

9.     "On March 6, 2018, I drafted and delivered a four-page written response to the allegations made against me by Jane Roe that were contained in a letter from Defendant Emily Garza dated February 14, 2018. My response letter was drafted on a computer and sent from my permanent residence in Plano, Collin County, Texas, Eastern District of Texas, as noted in the heading of my response letter.

10.     "Following Jane Roe's allegations and my suspension from the football team, my father had a few discussions over the phone with the new football head coach regarding my status on the football team, whether my football scholarship would be renewed, and transfer opportunities. My father had all of these discussions from our permanent residence in Plano, Collin County, Texas, Eastern District of Texas.

11.     "I ultimately learned that I had been released from the Rice University football program near the end of the Spring 2018 semester while I was at home in Plano, Collin County, Texas, Eastern District of Texas."

Exhibit A

Further Affiant sayeth not.

# REDACTED
REDACTEDREDACTEDREDACTED

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, to certify which witness my hand and official seal on this 24th day of January, 2020.

MELISSA HERMAN
Notary ID #128336620
My Commission Expires
November 14, 2022

Notary Public in and for
The State of Texas

Exhibit A

AFFIDAVIT OF REDACTEDREDACTEDREDACTED

4